# In the United States Court of Federal Claims

No. 23-1728
(Filed Under Seal: December 7, 2023)
(Reissued for Publication: December 18, 2023)[1]

```
*****************************************
TOGIAK MANAGEMENT SERVICES, LLC,  *
                                  *
                    Plaintiff,    *
                                  *
           v.                     *
                                  *
THE UNITED STATES,                *
                                  *
                    Defendant.    *
*****************************************
```

*Dirk D. Haire*, Fox Rothschild, LLP, Washington, DC, counsel for Plaintiff. With whom were *Joseph Cohen* and *David Timm*, Fox Rothschild, LLP, Washington, DC, of counsel.

*Daniel Falknor*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom were *John Carrell* and *Molly M. Hunt*, U.S. Army Corps of Engineers.

## OPINION AND ORDER

**DIETZ, Judge.**

Togiak Management Services, LLC ("Togiak") challenges a decision by the United States Army Corps of Engineers – St. Paul District ("USACE") to reject the sealed bids Togiak submitted in response to two solicitations for lock and dam bulkhead construction services. Togiak contends that the USACE erred by rejecting Togiak's bids as nonresponsive on the grounds that their bid bonds did not contain original, wet signatures and treating the enforceability of bid bonds as a matter of responsiveness rather than responsibility. The government asserts that Togiak failed to comply with the terms of the solicitations and that the sufficiency of bid bonds is a matter of responsiveness. Because the Court finds that the USACE's decision to reject Togiak's bids lacks a rational basis, Togiak's motion for judgment on the administrative record is **GRANTED**, and the government's cross-motion for judgment on the administrative record is **DENIED**.

### I.   BACKGROUND

---

[1] This Opinion and Order was filed under seal on December 7, 2023, *see* [ECF 23], in accordance with the Protective Order entered on October 11, 2023. *See* [ECF 6]. The parties were given an opportunity to identify protected information for redaction. The parties filed a joint status report on December 15, 2023, stating that they do not have any proposed redactions. [ECF 25].

On August 8, 2023, the USACE issued two solicitations seeking a contractor for the construction of bulkhead recesses at Lock and Dam No. 9 ("LD9") located near Eastman, Wisconsin and Lock and Dam No. 3 ("LD3") located near Welch, Minnesota. AR 4, 12.[2] The USACE used the sealed bidding procedures under Federal Acquisition Regulation ("FAR") Part 14 for the procurements. *Id.* Block 13 of Standard Form 1442 in the solicitations required bidders to deliver "[s]ealed offers in original and 1 cop[y]." AR 18. The solicitations informed bidders that "[a]ll offers are subject to the . . . provisions and clauses incorporated in the solicitation in full text or by reference." *Id.* The solicitations' instructions required that each bidder "submit with its bid a Bid Bond (current version of Standard Form 24) with good and sufficient surety or sureties acceptable to the Government or other security as provided in the clause BID GUARANTEE in the form of twenty percent (20%) of the bid price or $3,000,000 whichever is lesser." AR 28. The solicitations further required bidders to submit "sealed, hand-carried, courier-delivered or mailed, bid envelope[s] containing the bid package." AR 26.

The solicitations incorporated FAR 52.228-1 Bid Guarantee, which provides that "[f]ailure to furnish a bid guarantee in the proper form and amount, by the time set for opening of bids, may be cause for rejection of the bid." AR 36. FAR 52.228-1 also requires that bidders "furnish a bid guarantee in the form of a firm commitment, e.g., bid bond supported by good and sufficient surety or sureties acceptable to the Government, postal money order, certified check, cashier's check, irrevocable letter of credit, or, under Treasury Department regulations, certain bonds or notes of the United States." AR 37. The solicitations stated that "FACSIMILE OF BIDS AND MODIFICATIONS THERETO WILL NOT BE ACCEPTED." AR 27 (emphasis in original). Additionally, the solicitations included FAR 52.214-19, which states that "[t]he Government may reject any or all bids, and waive informalities or minor irregularities in bids received." AR 33.

On August 30, 2020, prior to the solicitations, the Department of Defense, Office of the Under Secretary of Defense ("DOD") issued Class Deviation 2020-O0016 in response to the 2019 coronavirus disease ("COVID-19") pandemic. *See* Class Deviation—Original Documents, Signatures, Seals, and Notarization ("Class Deviation").[3] The memorandum accompanying the Class Deviation states:

> Effective immediately, to respond to the Coronavirus Disease 2019 (COVID-19) national emergency, contracting officers shall utilize the deviations from the [FAR] and the Defense Federal Acquisition Regulation Supplement (DFARS) authorized in attachments 1 and

---

[2] The Court cites to the administrative record, filed by the government at [ECF 7] on October 18, 2023, as "AR ___." Togiak's bid protest grounds are substantively the same for the LD9 and LD3 procurements. Togiak's initial complaint related only to the LD9 procurement. Compl. [ECF 1]. Togiak amended its complaint to include the LD3 solicitation after the government filed the administrative record. Am. Compl. [ECF 12]. To avoid disruption of the briefing schedule, the Court did not require the government to refile the administrative record. Accordingly, the Court cites to the LD9 solicitation and related documents in the administrative record in lieu of citing to both the LD9 and LD3 documents.

[3] The solicitations do not cite the Class Deviation, and the administrative record does not contain the text of the Class Deviation. However, the parties agree that the Class Deviation was in effect at the relevant times and applies to the actions of the USACE. *See* Def.'s Cross Mot. for J. on the Admin. R. [ECF 14] at 12.

> 2, respectively, to provide flexibility with regard to original documents, manual signatures, seals, and notarization in order to facilitate certain essential contracting procedures.

*Id.* The memorandum further states:

> [W]hen obtaining financial protection against losses under contracts per FAR Part 28 . . . [e]lectronic signatures and electronic, mechanically-applied, or printed dates may be used and shall be considered original signatures and dates, without regard to the order in which they are affixed for all of Part 28, not just 28.101-3.

*Id.* FAR Part 28 prescribes the requirements for the United States to obtain financial protections through "bid guarantees, bonds, alternative payment protections, security for bonds, and insurance." FAR 28.000. In addition, the attachments referenced in the memorandum contain the authorized deviations to FAR Part 28. *See* Class Deviation at 3-16. Attachment 1 incorporates a policy statement for FAR Part 28: "For purposes of this part, electronic signatures and electronic, mechanically-applied, or printed dates may be used and shall be considered original signatures and dates, without regard to the order in which they were affixed." *Id.* at 3.

      Togiak timely submitted sealed bids in response to the solicitations. AR 744. As part of its submissions, Togiak included bid bonds on Standard Form 24. AR 750. The surety applied a wet signature to the bid bonds and electronically scanned them.[4] [ECF 22] at 1-2. Appended to each bid bond was a signed, sealed, and notarized Power of Attorney. AR 752. The surety sent the scanned bid bonds via electronic mail to Togiak. [ECF 22] at 1-2. Togiak printed the bid bonds and signed them with a wet signature. *Id.* at 2. Togiak then electronically scanned the bid bonds and sent them via electronic mail to Togiak's division manager. *Id.* The manager printed the electronically scanned bid bonds and added the bid bonds to Togiak's respective bid packages. *Id.* Each package therefore included a Standard Form 1442 with a wet signature by Togiak and a photocopy of the signed bid bond. *Id.*

      On September 14, 2023, the USACE informed Togiak of its unsuccessful bids for the LD9 and LD3 solicitations. AR 763. Togiak was the apparent or next apparent lowest bidder for both solicitations, AR 764, 766; however, the USACE rejected the bids because "the bid bond submitted with [Togiak's] bid is a copy and does not contain original (wet) signatures." AR 764, 766. The USACE quoted a Government Accountability Office ("GAO") decision, *TJ's Marine Construction LLC*, in its rejection letter to Togiak:

> As stated by the Comptroller General in TJ's Marine Construction, LLC, B-402227, 2010 CPD ¶ 19 (January 7, 2010): "For the bid guarantee to be viewed as enforceable, the surety must appear to be

---

[4] During the hearing on Togiak's emergency motion for a temporary restraining order, Togiak informed the Court that Togiak's surety signed the bid bond, scanned it, and sent it via electronic mail to Togiak. Hr'g on Emergency Mot. for Temp. Restraining Order at 19:04-19:23, *Togiak Mgmt. Servs., LLC v. United States*, No. 23-1728 [hereinafter Hearing]. Pursuant to the Court's November 17, 2023, Order, the parties filed a joint notice of undisputed facts pertaining to Togiak's submitted bid bonds. Joint Notice [ECF 22].

> clearly bound based on the information in the possession of the contracting officer at the time of bid opening. Copies of bid guarantee documents, whether transmitted electronically or hand-delivered, generally do not satisfy the requirement for a bid guarantee since there is no way, other than by referring to the original documents after bid opening, for the contracting agency to be certain that there had not been alterations to which the surety had not consented and could use as a basis to disclaim liability . . . [T]he bond's deficiency may not be cured by requesting submission of the original bond documents after bid opening because this would essentially provide the bidder with the option of accepting or rejecting the award by either correcting or not correcting the bond deficiency, which is inconsistent with the sealed bidding system."

AR 766 (quoting *TJ's Marine Constr. LLC*, B-402227, 2010 CPD ¶ 19 (Comp. Gen. Jan. 7, 2010)). The USACE stated that "an inadequate bid guarantee is nonresponsive and cannot form the basis of a contract award." AR 764, 766. Accordingly, the USACE rejected Togiak's bids "pursuant to FAR 28.101-4(a)," AR 765, 767, which provides "[i]n sealed bidding, noncompliance with a solicitation requirement for a bid guarantee requires rejection of the bid."

Togiak filed the instant protest on October 4, 2023, alleging that the USACE's rejection of its sealed bids was arbitrary, capricious, and contrary to law. Compl. [ECF 1]. During the initial status conference, the government stated that the USACE will voluntarily stay performance on the LD9 contract. The government did not state whether the USACE would voluntarily stay performance on the LD3 contract. On November 16, 2023, Togiak filed an Emergency Motion for a Temporary Restraining Order after learning that the USACE had not stayed the award and performance of the LD3 contract. *See* Emergency Mot. for Temp. Restraining Order [ECF 17] at 2-3. On November 21, 2023, the Court held a hearing on Togiak's motion and subsequently denied the motion on the basis that Togiak would not be irreparably harmed. *See* [ECFs 19, 20]. On November 27, 2023, the Court ordered the parties to file a joint notice on the facts pertaining to Togiak's bid bond. [ECF 21]. The parties submitted a joint notice with undisputed facts on November 29, 2023. [ECF 22]. Pending before the Court are Togiak's motion and the government's cross-motion for judgment on the administrative record. [ECFs 13, 14]. The motions are fully briefed, and the parties did not seek oral argument.

## II.    LEGAL STANDARDS

The Tucker Act grants this Court jurisdiction "to render judgment on an action by an interested party objecting to . . . a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement." *See* 28 U.S.C. § 1491(b)(1). The Tucker Act's waiver of sovereign immunity "covers a broad range of potential disputes arising during the course of the procurement process[,]" including objections to an award. *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1380-81 (Fed. Cir. 2012).

4

Under Rule 52.1 of the Rules of the United States Court of Federal Claims ("RCFC"), a party may file a motion for judgment on the administrative record to assess whether a federal administrative body acted in accordance with the legal standards governing the decision under review. *Agile Def., Inc. v. United States*, 143 Fed. Cl. 10, 17 (2019). An RCFC 52.1 motion "is often an appropriate vehicle to scrutinize an agency's procurement actions because such cases typically involve interpretation of contract documents or regulations, thereby presenting no disputed issues of material fact." *Banknote Corp. of Am., Inc. v. United States*, 365 F.3d 1345, 1352 (Fed. Cir. 2004). A motion for judgment on the administrative record "provide[s] for trial on a paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). This Court's inquiry is "whether, given all the disputed and undisputed facts, a party has met its burden of proof based on the evidence in the record." *A&D Fire Prot., Inc. v. United States*, 72 Fed. Cl. 126, 131 (2006).

This court reviews bid protests using the standard of review set forth in the Administrative Procedure Act ("APA"), *see* 28 U.S.C. § 1491(b)(4), which permits the court to set aside an agency's contracting decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2018); *see Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1080 (Fed. Cir. 2001). The court may set aside an award if "the procurement official's decision lacked a rational basis" or "the procurement procedure involved a violation of regulation or procedure." *WellPoint Mil. Care Corp. v. United States,* 953 F.3d 1373, 1377 (Fed. Cir. 2020). The "arbitrary or capricious standard . . . is highly deferential" to the agency's decision and "requires a reviewing court to sustain an agency action evincing rational reasoning and consideration of relevant factors." *Advanced Data Concepts, Inc. v. United States*, 216 F.3d 1054, 1058 (Fed. Cir. 2000). A protestor "bears a heavy burden of showing that the award decision had no rational basis." *Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1333 (Fed. Cir. 2001) (cleaned up). In addition to showing that the government's actions were arbitrary, capricious, or otherwise not in accordance with law, the protestor must "show that it 'was prejudiced as a result – that it had a substantial chance to receive the award but for that error.'" *Newimar S.A. v. United States*, 160 Fed. Cl. 97, 128 (2022) (quoting *Banknote Corp. of Am., Inc. v. United States*, 56 Fed. Cl. 377, 386-87 (2003), *aff'd*, 365 F.3d 134 (Fed. Cir. 2004)).

### III.   DISCUSSION

Togiak raises two challenges to the USACE's rejection of its bids. First, Togiak argues that the USACE "committed clear, reversible procurement error when it ignored [the] Class Deviation . . . which permits copies of bid bonds without wet (original) signatures[.]" Pl.'s Mot. for J. on the Admin. R. [ECF 13] at 14.[5]   Next, Togiak argues that, even if the Class Deviation does not apply, the USACE erred by treating the authenticity and enforceability of its bid bonds as a matter of responsiveness, instead of responsibility. As explained below, the Court finds that the Class Deviation does require that a photocopy of a bid bond be treated as an original. The Court further finds that, while the FAR does not require the USACE to treat the authenticity and enforceability of a bid bond as a matter of responsibility, the USACE did not have a rational basis for rejecting Togiak's bids as nonresponsive because the GAO precedent relied upon by the USACE to reject Togiak's bids does not provide a rational basis.

---

[5] All page numbers in the parties' briefings refer to the page numbers generated by the CM/ECF system.

### A. Togiak's Assertion that the Class Deviation Requires that Photocopied Bid Bonds be Treated as Original

Togiak argues that the "plain language, intent, and effect of the Class Deviation takes the less-stringent requirements of FAR 28.101-3(b) and (c) and applies them to 'all of Part 28,' which includes bid bond requirements." [ECF 13] at 15. Togiak asserts that, because "FAR 28.101-3 considers copies of documents that have only electronic or mechanically-applied (i.e., facsimiles) [signatures] to be 'original signatures, seals and dates[,]'" the Class Deviation "remove[s] the need for original documents with wet signatures[.]" *Id*. at 15-16. Thus, Togiak contends that the USACE erred when it rejected Togiak's bids on the grounds that the bid bonds submitted by Togiak were copies and did not contain original, wet signatures. The Court finds that the Class Deviation does not extend all the requirements of FAR 28.101-3(b) and (c) to FAR Part 28 and that the contracting officer ("CO") did not err by not applying the Class Deviation to Togiak's bid bonds.

FAR Part 28, titled "Bonds and Insurance," prescribes the requirements for the government to obtain financial protection against losses under contracts resulting from the use of sealed bidding. FAR 28.000. It governs the use of bid bonds. FAR 28.100. FAR 28.101-3(a) requires that a person signing a bid bond as an attorney-in-fact include evidence of authority to bind the surety. FAR 28.101-3(b) states that "[a]n original, or a photocopy or facsimile of an original, power of attorney is sufficient evidence of such authority[,]" and FAR 28-101-3(c) states that "[f]or purposes of this section, electronic, mechanically-applied and printed signatures, seals and dates on the power of attorney shall be considered original signatures, seals and dates, without regard to the order in which they were affixed."

The purpose of the Class Deviation is "to provide flexibility with regard to original documents, manual signatures, seals, and notarization in order to facilitate certain essential contracting procedures." Class Deviation at 1. The Class Deviation's accompanying memorandum instructed COs to use the deviations to the FAR contained in its attachments. *Id.* Attachment 1 incorporated a policy statement to FAR Part 28, which states that "[f]or purposes of this part, electronic signatures and electronic, mechanically-applied, or printed dates may be used and shall be considered original signatures and dates, without regard to the order in which they were affixed." *Id*. at 3.

While the Class Deviation references and borrows terminology from FAR 28.101-3, there is a clear distinction. FAR 28.101-3 applies to the power of attorney. It allows "[a]n original, or a photocopy or facsimile of an original, power of attorney" to serve as sufficient evidence of such authority and further instructs that "electronic, mechanically-applied and printed signatures" are to be considered original signatures. FAR 28.101-3. On the other hand, the Class Deviation instructs that only *electronic* signatures are to be considered original signatures. It does not expand the permission to use photocopies or facsimiles under FAR 28.101-3(b). Further, it excludes "mechanically-applied" and "printed" signatures from being considered original signatures, as required under FAR 28.101-3(c). *Compare* Class Deviation at 3 ("electronic signatures"), *with* FAR 28.101-3(c) ("electronic, mechanically-applied and printed signatures"). Based on the plain language of the Class Deviation, the Court is not persuaded by Togiak's

argument that it applies the less-stringent requirements of FAR 28.101-3(b) and (c) to all of FAR Part 28. *See SH Synergy, LLC v. United States*, 165 Fed. Cl. 745, 781 (2023) (rejecting unreasonable interpretation of statute that contradicted its plain and unambiguous language); *see also Goodwill Indus. of S. Fla., Inc. v. United States*, 162 Fed. Cl. 160, 192 (2022) ("When the text is unambiguous, the court need only read the plain language of the regulation.").

Because the Class Deviation allows only for electronic signatures to be treated as original and does not allow for a photocopy of a bid bond, Togiak's argument that the Class Deviation "permits copies of bid bonds without wet (original) signatures" fails. Togiak's surety manually applied a wet signature to the bid bonds, scanned the bid bonds into electronic form, and emailed the electronic versions to Togiak. [ECF 22] at 2. Togiak then printed the bid bonds, signed the hard-copy forms, and electronically scanned the forms prior to submitting them to the USACE in hard-copy form. *Id.* None of the signatures on Togiak's bid bonds were electronic signatures; instead, each was a hard-copy of an electronically-transmitted signature. Although the FAR allows electronic symbols to be signatures, *see* FAR 2.101, a hard-copy of an electronically-transmitted wet signature—a paper submission—does not constitute an electronic signature, which is required for electronic submissions. *See Mills v. United States*, 154 Fed. Cl. 549, 556 (2021) ("Electronic signatures are required for documents that may be submitted in electronic format; forms that have traditionally been filed in paper format must always have a handwritten signature."). Even if the printed copies of the wet signatures could be viewed as mechanically-applied or printed signatures, Togiak's desired application of the Class Deviation still fails because the Class Deviation does not provide for mechanically-applied or printed signatures to be considered original.

**B.    Togiak's Assertion that the USACE Improperly Rejected its Bid Without Undergoing a Responsibility Determination**

Togiak contends that, even if the Class Deviation does not apply, the USACE should have undergone a responsibility determination because "case law and the FAR are clear that the authenticity of bid bonds is an issue of responsibility, not responsiveness." [ECF 13] at 16. The Court finds that, although the FAR explicitly instructs that questions regarding the authenticity and enforceability of the power of attorney are treated as matters of responsibility to be handled after bid opening, the FAR does not require that the CO conduct a responsibility determination if there are questions regarding the bid bond. Nevertheless, the Court also finds that the GAO precedent relied upon by the USACE to reject Togiak's bids does not provide a rational basis for its rejection.

Togiak asserts that the USACE should have treated the bid bonds as an issue of responsibility because "[COs] are directed to investigate when there are doubts about the 'authenticity and enforceability' of a bid bond at bid opening."[6] [ECF 13] at 16. Togiak argues

---

[6] Bid opening is a term of art specific to FAR Part 14, which governs the procedures for sealed bidding. FAR 14.000. "Sealed bidding is a method of contracting that employs competitive bids, public opening of bids, and awards." FAR 14.101. In contrast to FAR Part 15, i.e., negotiated procurement, FAR Part 14 requires the submission of sealed offers that the agency will evaluate without discussions. FAR 14.101(c)-(d). "After bids are publicly opened, an award will be made with reasonable promptness to that responsible bidder whose bid, conforming to the invitation for bids, will be most advantageous to the government, considering only price and the price-related factors in the invitation." FAR 14.101(e).

that the CO must "'contact[] the surety to validate the power of attorney . . .' and if 'the surety declares the power of attorney to have been valid at the time of bid opening . . . the [CO] may require correction of any technical error.'" *Id.* at 16-17 (quoting FAR 28.101-3). Togiak's argument is not supported by the plain language of the FAR clause. FAR 28.101-3 creates a carve-out for responsibility determinations specific to the power of attorney. *See* FAR 28.101-3(d)(2) (The CO shall "[t]reat questions regarding the authenticity and enforceability of *the power of attorney* at the time of bid opening as a matter of responsibility.") (emphasis added).[7] It does not apply to bid bonds. Because Togiak's approach would improperly expand the scope of FAR 28.101-3, the Court rejects this argument. *See SH Synergy*, 165 Fed. Cl. at 781.

Nonetheless, the USACE did not have a rational basis in rejecting Togiak's bids because the GAO precedent relied upon by the USACE does not provide a rational basis for rejecting Togiak's photocopied bid bonds. In its rejection letter, the USACE relied solely on the GAO decision in *TJ's Marine* for the principle that any photocopied bid guarantee is nonresponsive. AR 766. In *TJ's Marine*, the GAO begins its analysis by stating that "[t]he determinative question in judging the sufficiency of a bid guarantee such as a bid bond is whether it could be enforced if the bidder subsequently fails to execute required contract documents and to provide performance and payment bonds." 2010 CPD ¶ 19, at 3. Here, the USACE adopted the GAO's answer to this determinative question to reject Togiak's bids as stated below:

> Copies of bid guarantee documents, whether transmitted electronically or hand-delivered, generally do not satisfy the requirement for a bid guarantee, since there is no way, other than by referring to the original documents after bid opening, for the contracting agency to be certain that there had not been alterations to which the surety had not consented and use as a basis to disclaim liability.

AR 766 (quoting *TJ's Marine*, 2010 CPD ¶ 19, at 3).

The principle that a photocopied bid guarantee is defective originates in an earlier GAO decision, *Imperial Maintenance, Inc*. In that case, the GAO rejected a photocopied letter of credit—a type of bid guarantee. *Imperial Maint., Inc.*, B-224257, 87-1 CPD ¶ 34, at 2 (Comp. Gen. Jan. 8, 1987). In addition to being a photocopy, the letter of credit was incorrectly "addressed to the bidder [rather] than to the third party beneficiary, i.e., the Navy, and did not specifically state the terms and conditions upon which the Navy could make a demand on the bank." *Id.* Despite these flaws, the GAO held that "[t]he mere fact [that the letter] was a photocopy, in our opinion, is sufficient to render the instrument defective, since there would be no way (other than by examination of the original) that the agency could be certain that there had not been alterations to which the bank had not consented." *Id.* The GAO cited *Ameron, Inc.*, B-

---

[7] The regulatory history for FAR 28.101-3(d)(2) confirms this reading because the Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council ("Councils") specifically revised FAR Part 28 to instruct COs to address issues of authenticity and enforceability of the power of attorney "after bid opening as a matter of responsibility." Federal Acquisition Regulation; Powers of Attorney for Bid Bonds, 70 Fed. Reg. 57,459 (Sept. 30, 2005) (to be codified at 48 C.F.R. pt. 52).

218262, 85-1 CPD ¶ 485 (Comp. Gen. Apr. 29, 1985) and *Baucom Janitorial Service, Inc.*, B-206353, 82-1 CPD ¶ 356 (Comp. Gen. Apr. 19, 1982)) to support its holding. *Id.* However, these decisions do not support the GAO's holding that "the mere fact" that a bid guarantee is photocopied is sufficient to render it defective.

In *Ameron*, the solicitation required "submission of a bid bond in the amount of 20 percent of the bid price, or $3 million, whichever is lesser." *Ameron*, 85-1 CPD ¶ 485, at 1. Upon bid opening, the agency noted that "the original typewritten not to exceed penal sum was $1,200,000 and that [an] alteration was made by a typist for the bonding company before the bond was signed." *Id.* The agency determined Ameron's bid to be nonresponsive "because the bid bond had been altered without any evidence that the surety consented to the alteration." *Id.* In its challenge to the agency's rejection, Ameron conceded "that the bond accompanying its bid was altered without any evidence in the bid documents or the bond itself that the surety agreed to the changes." *Id.* However, it argued "that its failure to submit any evidence that the surety consented to the changes is a minor informality that the [CO] should have waived or allowed Ameron to cure." *Id.* The GAO rejected Ameron's arguments, explaining that "[a] material alteration to a bond, such as in the penal amount, made without the surety's consent discharges the surety from liability, and a material alteration thus necessarily raises a question whether the surety has any obligation under the bond." *Id.* at 2. The decision to reject the bid as nonresponsive hinged on the fact that the bid bond had been materially altered, not that the bid bond had been photocopied.

In *Baucom*, the GAO similarly rejected a bid as nonresponsive because it was accompanied by an altered bid bond without any evidence in the bid documents or the bond itself that the surety consented to be bound by the changes. 82-1 CPD ¶ 356, at 1. The bond submitted by Baucom "had white correction fluid" to modify the dollar amounts of the penal sum and liability limit on the bid bond. *Id.* Baucom contended that the agency should not have rejected its bid as nonresponsive because "it furnished proof in the form of an affidavit from its surety that the bid bond alterations were done with the surety's pre-bid opening consent." *Id.* The GAO rejected Baucom's arguments, explaining that "Baucom cannot establish its surety's consent to the bid bond alterations, and thereby correct the bidding defect, by a post-bid opening affidavit." *Id.* at 2. As in *Ameron*, the GAO's decision to reject the bid as nonresponsive was not based on the fact that the bid bond was a photocopy.

A later GAO decision further calls into question the principle that a bid bond is defective solely because it is photocopied. In *The King Co., Inc.*, the protester submitted a photocopied bid bond and a photocopied power of attorney. B-228489, 87-2 CPD ¶ 423, at 1. The power of attorney form "contained the statement 'Valid only if Numbered in Red,'" *id.*, but the photocopy's serial numbers on the power of attorney "appeared in black, not red." *Id.* The protester argued that this defect was "a matter of form rather than substance and that the bid was therefore responsive." *Id.* The GAO rejected this argument, stating that "[w]here [a] bidder submits a photocopied bid bond and a photocopied Power of Attorney which indicates on its face that only an original is valid, the bid bond is of questionable enforceability, and the bid is properly rejected as nonresponsive." *Id.* The GAO thus dismissed the protest because the power of attorney "indicate[d] that only the original document is valid, [and therefore] the photocopied document was invalid." *Id.* In an apparent departure from its decision in *Imperial*, the GAO

9

stated that "while we do not hold that all photocopied bid bonds necessarily render a bid nonresponsive, the facts of this case dictate that the surety could disclaim[] liability on the bid bond. Consequently, the bid was nonresponsive." *Id.* In other words, the GAO's decision that the bid was nonresponsive did not hinge on the fact that the bid bond was photocopied. Rather, it was because the power of attorney was invalid *on its face* and thus could allow the surety to disclaim liability.

In decisions since *Imperial* and *The King Co.*, the GAO has established a principle that any photocopied bid bond renders the bid nonresponsive. The GAO has denied the protests of bidders who submitted photocopied or facsimile bid bond forms, even where the bid bonds did not contain flaws like those in *Imperial* or *The King Co. See, e.g., Excel Bldg. & Dev. Corp.*, B-401955, 2009 CPD ¶ 262 (Comp. Gen. Dec. 23, 2009) (denying protest solely on the basis that protester submitted a bid bond with a copy of the surety agent's signature); *Jay-Brant Gen. Contractors*, B-274986, 97-1 CPD ¶ 17 (Comp. Gen. Jan. 10, 1997) (denying protest where protester submitted photocopy of bid bond); *Frank & Son Paving, Inc.*, B-272179, 96-2 CPD ¶ 106 (Comp. Gen. Sept. 5, 1996) (denying protest because bid that included only a photocopy of the bid bond was nonresponsive); *Bird Constr.*, B-240002; B-240002.2, 90-2 CPD ¶ 234 (Comp. Gen. Sept. 19, 1990) (denying protest where bidder submitted only a facsimile copy of the bid bond). For example, in *Excel*, the only issue with the protester's bid bond was "that [it] contained the original signature of the principal and a copy of the surety agent's signature and seal." *Excel*, 2009 CPD ¶ 262, at 1. The agency rejected the protester's bid because "the protester did not submit an original bid bond, which raised questions as to whether the bid document was altered." *Id.* at 2. The GAO agreed with the agency's rationale and held that "[w]ithout referring, after bid opening, to the document containing the surety agent's original signature, the [agency] cannot ascertain whether or not there had been alterations to which the surety had not consented and could use as a basis to disclaim liability." *Id.* at 3. The GAO's decisions have thus simplified its analysis into a single principle that all photocopies of bid bonds are nonresponsive, ignoring whether the bid bond contains alterations or other defects that affect enforceability.

In this case, Togiak's power of attorney form does not include a disclaimer (as in *The King Co.*). *See* AR 752. Furthermore, the USACE has not raised any concerns regarding the authenticity or enforceability of Togiak's power of attorney. *See* AR 766-67. Nor has the USACE identified any errors in Togiak's bid bonds (as in *Imperial*) or the presence of alterations (as in *Ameron* or *Baucom*). *Id.* The only issue raised by the USACE is that Togiak's bid bonds included copies of wet signatures. AR 766. Under *TJ's Marine*, the determinative question is not whether the surety's signature is an original signature or a copy, but whether the bid bonds are enforceable.[8] *TJ's Marine*, 2010 CPD ¶ 19, at 3. Although the USACE relied on *TJ's Marine* to answer this question, that GAO decision rests on prior GAO decisions that did not focus on the

---

[8] Although *TJ's Marine* rejected the veracity of photocopied signatures, the enforceability of a bid bond cannot be determined solely on the form of a signature—whether it is a photocopy or an original. "[I]n this regard, a [photocopied] signature is not unique in any way compared with an original wet signature. The risk of fraud or forgery is inherent in any executed document." *Id.*; *see also URS Fed. Servs.*, ASBCA No. 61443, 19-1 BCA ¶ 37,448 ("No ink signature, on its face, includes any way for the reader to know who executed it unless that reader already possesses an intimate familiarity with the certifier's handwriting—and even that knowledge can be overcome by the simple expedients of tracing or photo-shopping such a mark."). In other words, requiring an original signature does not provide an inherent protection against fraud or forgery. That said, the USACE could determine the authenticity and enforceability of the bid bond through other ways.

fact that the bid bond was a photocopy. While the Court generally defers to the GAO's interpretation of procurement regulations, the Court must intervene if the GAO decision is irrational. *See Firth Constr. Co., Inc. v. United States*, 36 Fed. Cl. 268, 272 (1996); *see also Hawaiian Dredging Constr. Co., Inc. v. United States*, 59 Fed. Cl. 305, 316 (2004) ("Although the [CO's] decision to reject plaintiff's bids was unreasonable, it is not unreasonable because he relied on GAO precedent . . . It is unreasonable for a [CO] to rely on unreasonable rationale when making such a decision"). The GAO's decision in *TJ's Marine* has no support in its own precedent. Where "the GAO draws a legal conclusion with no principled support . . . the decision [is] therefore irrational." *Firth Constr.*, 36 Fed. Cl. at 276. Accordingly, the USACE "would be arbitrary, capricious, and acting contrary to law in following it." *Id.* at 276-77.

The government's argument that the USACE did not rely solely upon the GAO's precedent in rejecting Togiak's bid bonds is unpersuasive. The government contends that the natural reading of the USACE's rejection letter to Togiak "is confirmed by other parts of the record pre-dating the protest." Def.'s Rep. to Pl.'s Resp. to Def.'s Cross Mot. for J. on the Admin. R. [ECF 16] at 4. In support of this argument, the government relies on an email the CO sent a few weeks prior to this protest to another offeror who wished to know why its bid bond was deficient. *See id.* at 5. The email, sent a day after the USACE rejected Togiak, states that the solicitation's requirement for sealed offers in original includes the bid bond and that the offeror's electronically signed document did not constitute an original. *See* AR 768. The government's argument is unavailing because the USACE did not cite to this requirement in its rejection letter to Togiak, and, therefore, it is post hoc rationale.[9] *Savantage Fin. Servs., Inc. v. United States*, 150 Fed. Cl. 307, 327 (2020) ("Any post hoc rationales an agency provides for its decision are not to be considered.") (citing *CRAssociates, Inc. v. United States*, 95 Fed. Cl. 357, 376 (2010)).

Further, the USACE clearly relied only on GAO precedent in Togiak's rejection letter. *See* AR 766. In addition to citing *TJ's Marine*, the USACE cited additional GAO decisions for the proposition that "an inadequate bid guarantee is nonresponsive and cannot form the basis of a contract award." AR 766 (citing *Minority Enters.*, B-216667, 85-1 CPD ¶ 57, at 1; *Design for Health, Inc.*, 69 Comp. Gen. 712, 712 (1990)). Both decisions involve other errors than the bidder submitting a photocopy of a signature on the bid bond. *See Minority*, 85-1 CPD ¶ 57, at 1 (denying protest where the bid bond "does not designate a surety and only indications of identity of surety are an illegible signature and corporate seal, and accompanying documents do not clearly relate to this procurement."); *Design for Health*, 69 Comp. Gen. at 712 (denying protest where "the legal entity shown on the bid form and the legal entity shown on the bid bond are not the same."). Thus, these GAO decisions do not provide a separate basis for the agency to reject Togiak's bids because the USACE did not identify errors or similar issues in Togiak's bid bonds that would undermine the bid bonds' enforceability. Accordingly, the USACE's rejection of Togiak's bids was irrational.

---

[9] The government's reliance on the solicitation requirement that "FACSIMILE OF BIDS AND MODIFICATIONS THERETO WILL NOT BE ACCEPTED," AR 27 (emphasis in original), also fails because the USACE did not cite to this requirement in Togiak's rejection letter. This argument also lacks merit because Togiak submitted its bid in hard-copy form, not by facsimile.

### C. Togiak was Prejudiced by the USACE's Arbitrary and Capricious Rejection of its Bid

Having found that the USACE acted arbitrarily and capriciously, the Court now considers whether Togiak was prejudiced by the USACE's errors. *See Bannum*, 404 F.3d at 1351 (stating that once a court finds that an agency acted arbitrarily, the court "proceeds to determine, as a factual matter, if the bid protester was prejudiced by that conduct"). For Togiak to prevail, it "must show prejudicial error." *Glenn Def. Marine (Asia), PTE, Ltd. v. United States*, 720 F.3d 901, 908 (Fed. Cir. 2013). There is no presumption of prejudice upon a showing that an agency acted irrationally. *Sys. Stud. & Simulation, Inc. v. United States*, 22 F.4th 994, 998 (Fed. Cir. 2021). To establish prejudice, Togiak must show that "but for the alleged error, there was a substantial chance that [it] would receive an award." *Allied Tech. Grp., Inc. v. United States*, 649 F.3d 1320, 1326 (Fed. Cir. 2011). The Court finds that Togiak has demonstrated that it was prejudiced by the USACE's errors because there is a substantial chance that Togiak, as the apparent and next lowest apparent bidder, would have been awarded the contracts but for the USACE's errors.[10] AR 764, 766.

### D. Togiak is Entitled to Injunctive Relief

The Tucker Act empowers the Court to "award any relief that the court considers proper, including declaratory and injunctive relief." 28 U.S.C. § 1491(b)(2). When determining whether to grant a permanent injunction, the Court must consider whether "(1) the plaintiff has succeeded on the merits, (2) the plaintiff will suffer irreparable harm if the court withholds injunctive relief, (3) the balance of hardships to the respective parties favors the grant of injunctive relief, and (4) the public interest is served by a grant of injunctive relief." *Centech Grp., Inc. v. United States*, 554 F.3d 1029, 1037 (Fed. Cir. 2009). Togiak has succeeded on the merits, so the Court must now consider whether Togiak will suffer irreparable harm, whether the balance of hardships favors granting the injunction, and whether the public interest is served by the injunction.

The Court finds that Togiak is entitled to injunctive relief because the remaining injunctive relief factors weigh in favor of granting such relief. *See Contracting, Consulting, Eng'g LLC v. United States*, 104 Fed. Cl. 334, 353 (2012) ("Although plaintiff's entitlement to injunctive relief depends on tis succeeding on the merits, it is not determinative because the three equitable factors must be considered, as well.") (citing *PGBA, LLC v. United States*, 389 F.3d 1219, 1228-29 (Fed. Cir. 2004)). First, Togiak will suffer irreparable harm without injunctive relief because there is no adequate alternative remedy for its lost opportunity to fairly compete for the contract. *See Insight Sys. Corp. v. United States*, 110 Fed. Cl. 564, 582 (2013) (highlighting "[t]he relevant inquiry in weighing this factor is whether plaintiff has an adequate remedy in the absence of an injunction") (alteration in original); *Sys. Studies & Simulation, Inc. v. United States*, 146 Fed. Cl. 186, 203 (2019) ("The United States Court of Federal Claims has repeatedly held that a protester suffers irreparable harm if it is deprived of the opportunity to compete fairly for a contract."). Second, the balance of hardships weighs in Togiak's favor. Although the government alleged that the USACE "will incur termination costs, and it will experience delays in switching contractors since the awardee has already started the submittal

---

[10] The government concedes that Togiak has shown prejudice if Togiak succeeds on the merits of its protest. [ECF 16] at 8 ("We do not disagree that if the agency erred when it rejected Togiak's bids, then Togiak was prejudiced.").

12

process on the LD3 contract," [ECF 16] at 9, the government admitted during the November 23, 2023, hearing that it assessed the risk it was undertaking by proceeding with the LD3 procurement rather than staying award of the contract. *See* Hearing at 32:48-33:28. Finally, the public interest weighs in Togiak's favor because "the public interest in honest, open, and fair competition in the procurement process is compromised whenever an agency abuses its discretion in evaluating a contractor's bid." *PGBA, LLC v. United States*, 57 Fed. Cl. 655, 663 (2003); *see also Ernst & Young, LLP v. United States*, 136 Fed. Cl. 475, 519 (2018). Because all four factors weigh in Togiak's favor, Togiak is entitled to injunctive relief.

### IV.    CONCLUSION

For the foregoing reasons, Togiak's motion for judgment on the administrative record [ECF 13] is **GRANTED**, and the government's cross-motion for judgment on the administrative record [ECF 14] is **DENIED**. The USACE is **ENJOINED** from awarding the contract for LD9 and from continuing performance of the contract awarded for LD3. The USACE is **ORDERED** to rescind the disqualifications of Togiak's bids under the LD9 and LD3 solicitations and to evaluate Togiak's bids in a manner that redresses the errors identified in this Opinion and Order. The Clerk is **DIRECTED** to enter judgment accordingly.

Some information contained in this Opinion and Order may be considered protected information subject to the Protective Order [ECF 6] entered on October 11, 2023. Accordingly, the Opinion and Order is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE on or before December 15, 2023**, a joint status report that: identifies information, if any, that the parties contend should be redacted; explains the basis for each proposed redaction; and includes an attachment of the proposed redactions for this Opinion and Order.

**IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge